Next on our calendar today is Kelly v. Larkin, 15-1604. May it please the Court, Robert Culp, assigned by the Court for Petitioner Kelly v. Larkin, I've briefed all three of the issues that are covered by the Certificate of Appealability as modified, and I think it's best if I focus on the middle issue, the ineffective assistance of counsel issue. Obviously, I'll entertain any questions the Court has on the others. This is a case where Mr. Kelly was failed by his state-appointed lawyer and the courts. He received the 25-to-life sentence in a case where his confession was far and away the most damning evidence against him, and his lawyer filed a Huntley motion to suppress his confession, and it was a motion that had a lot of potential merit. He was injured when he was arrested. He was held in custody for 15 hours or so. There were allegations of deprivations of food, sleep, etc. He wouldn't talk. He wouldn't even give his pedigree information, and yet he just sat there. But in the middle of all this, but we don't learn the facts until after the Huntley hearing is over, it turns out that my client was taken to the hospital for a couple of hours, and he was given at the very least the drug Percocet before being returned to the precinct and shortly thereafter confessing. This came out at trial when the emergency room doctor testified and on cross-examination agreed that Percocet is a powerful narcotic and said you really can't be sure if someone's going to be coherent or not even a couple hours after taking that. I'm going to throw in, in addition right now, that there is also information in the record that he also was given codeine at a toxic dose. I mean, it seemed to me that that was likely 800 milligrams. I don't know what a toxic dose of codeine is, Your Honor, and that's one of the points I'm going to make. And then there's also testimony from one of the, not from the doctor, but from the one of the detectives that he also took Vicodin. Now, maybe that detective mistook the Vicodin for the Percocet, and I, just like I don't know what the toxic dose of codeine is, I don't know what the interactive qualities of these drugs are, but certainly this was an issue, and without, I think it's without question that the lawyer failed his client by... Trial and brought out at trial. It came out at the trial in drips and drabs, mostly through the cross-examination of the emergency room physician. Here's my problem. Let's assume that what the trial that the attorney did at the suppression hearing was inadequate, but, and let's even assume that that would have made a difference in the suppression proceeding. It's not, it's clear, and again, the test is whether it was just, not just wrong, but unreasonable, because this is a state case. But the question of what the proceeding is in which the inadequacy should take place, whether that is the suppression or the whole thing, is a question as to which the Supreme Court has not spoken. Now, if you ask me, I think the proceeding is the suppression. I have no doubt about that, if you ask me, but my question is, under the extreme position the that we are not allowed to say it is not just wrong, but unreasonable, unless the Supreme Court has ruled on it, isn't there a problem with the fact that this, what is the proceeding, has not been decided by the Supreme Court? Now, again, you know, I think that's, I don't like the standard. I would decide it the other way, but in terms of just what I am bound to follow, don't we have a problem? I don't see the problem, because hasn't the Supreme Court told us that you're entitled to a pretrial hearing and to have a confession suppressed on a proper showing of an involuntary confession? You think it's clear enough from what the Supreme Court has said that the proceeding we look to is the trial, is the suppression, and that a state court deciding otherwise is not just wrong, but unreasonable? Yes, I do. I agree with you, Judge Calabresi, which is the easy way out for me. That's the argument you have to make, and that it is wrong for the state to decide otherwise, I have no doubt, but whether it is unreasonable under the Supreme Court. I have to confess, and that was not intended, that I'm not understanding the significance of the fact that this information also came out at trial as to the point you're making. You would also have to say if it came out at trial, it ultimately did not, again, a state court could find that it was not unreasonable to say that it made no difference for Strickland too, if a proceeding was at all. It wasn't the premise of your question that viewed at the level of the hearing, that there would have been a finding of a violation of the Constitution. Well, if that were the proceeding, if the proceeding is the whole thing, then you see my problem. I have difficulty because basically I think the proceeding is that one, and then that we should look to whether there was enough of an error there to make a difference. I can't answer your question, Judge. I'm not sure I can. I hadn't thought about it before coming in here. Perhaps it'd be helpful if I moved on. Let me ask you a question. In assessing ineffectiveness, I mean, we have to be doubly deferential in the court and so on. I wonder, just looking at a surprising failure to investigate the brief hospitalization and the effect of whatever medication, even ascertaining what medications he was given, whether to show that as a result the confession was involuntary, my understanding is counsel would have needed to make a showing also of some kind of police misconduct or overbearing behavior or even a circumstance where the defendant was so disabled that even asking any questions or receiving a confession would have been improper in some ways showing that his will was overborne. Absent any evidence of that kind of conduct, it seems a little less troubling to me that counsel didn't pursue or that the state court made the finding it did on Well, I think there are indications of overbearing behavior, if I can use that phrase. The mere fact that he was cuffed and chained to a chair for about 15 hours to me is overbearing. There were allegations. Now, I don't think the hearing judge credited them, but there were at the precinct. There was an allegation. The detective denied it, and the judge did not credit it. So I want to be clear about that. But I think there was that statement by the person at the hospital that there was a lack of feeding, so that there was something which could have been used to impeach the statement by the Yes, yes, that's true. Although the detectives themselves said that he had water, he had diet soda at some point. But I think that there are, I also, I don't know if it counts as deliberately, but I find it strange that they, that he was there for like 12 hours, and then they take him to the hospital. If they felt that he needed medical attention, admittedly, the detectives testified that he didn't ask for medical attention, and I have to acknowledge that. But if the detectives felt he needed medical attention, why don't they wait almost 12 hours to take him to the hospital? How about the fact that he added to his confession two things? One, the apology to the family, and the other particular attempted, attempted, he asked that that word be added to the confession. Doesn't that by itself justify a state court saying this confession, he knew what he was doing, regardless of anything else? I mean, these two tweaks are pretty important tweaks that he added. The first one, I believe he said something to the effect of, I shamed my mother when he was arrested, but that no, in the confession, he, he said, add my apology to the, my, my apology. He added both the word attempted, and he asked to have added in the written confession, an apology to the family of the victim. Yeah, I, this, I suppose that's an indication of someone who's lucid, who said something like that. But again, I think one of the problems we all have is that what impact does Percocet, or Percocet and Codeine, or Percocet and Codeine and Vicodin have on a person? Is he? Again, remember, the standard we go by is whether a state court finding that that is not coerced is not just wrong, but unreasonable, given those two, two things. And I, I just wondered whether those, I, I, I don't think a statement like that, that, that potentially could show lucidity would, would, would turn a wagon around that's, that's otherwise, I do want to, oh, it looks like I'm over. Take a minute more. We've been, oh, sure. I do want to make, make a comment about the, the sort of alternate relief argument we made in our briefs about hearing. The, the petitioner, when he filed his 440 in, in state court, laid out the ineffective assistance of counsel argument that, that I'm sort of repeating to an extent, and asked for a hearing. And the, the state court dismissed it saying, oh, this is something you can raise on direct appeal. And, and then up on direct appeal, it's kind of confusing because his, his appointed lawyer didn't raise this issue with the Percocet and so forth, but he did in a, in a pro se supplemental. And the court said, well, none of this has merit. But I don't, I don't think that the, that the state courts afforded him a what he's saying here. And I think we would all benefit from your honors remanding this case to Judge Corman for additional fact finding on, on the merits of this, because on the ground, on the argument that I'm making, that the state courts did not afford him an adequate opportunity and in effect dismissed this argument on, not on the merits, but on a procedural ground. And I think that, that these issues about, you know, how much is too much codeine or how much is too much Percocet or how does it affect or what interacts or whatever, that, that there's, there is an argument. Now I know that respondent says that, that, that I can't, we can't ask for that under the, the pinholster case. But I, I think based on the, the sort of cavalier dismissal of, of this as, and it's just wrong. I mean, when you make an ineffective assistance of counsel argument, whether it's state court or federal court, I think your honors all know that, that that's something that's, that's proper on collateral review. And it's, it's rarely something that you, in this court never, I think, but even in state court, it's rarely something that you must address on, on direct appeal. So I, you know, I just want to make a pitch for that, that request to your honor, your Fulton v. Graham case. Okay. One that I've cited. All right. Thank you very much. Mr. Miller. Good morning, your honors. I'm Michael J. Miller. I'm appearing on behalf of the respondent in this issue. I'd like to begin by saying this is not a confession case in the sense that the confession is the overarching cause or the reason for a conviction. In this particular case, you could have tried this case without the confession. I'm not saying that the confession wasn't useful, or it's not an issue before this court, but to come up here and say, well, this is all about whether or not he was convicted because of this confession, I don't think is consonant with the record in this case. Are you arguing that it was harmless error? I think it would be harmless error in this particular case. I mean, I just wondered if you were not just saying it, well, it wasn't that important, but you're actually saying, even if there was error in that and inadequacy of counsel with respect to the confession, it doesn't matter for Strickland too, because the result would have been the same because it was harmless error. If that's what you're saying. It would be a Brecht v. Abrahamson type of issue in this case. And I say that because the three men entered the store, and although they had masks on, they were on a videotape. They each wore a different style of winter coat. They each carried a different type of handgun. Mr. Kelly happened to be left-handed. There's only one person in that videotape carrying a gun in his left hand. They are essentially chased from the scene of a crime in a high-speed chase. They're all in one car over, I think, about 10 miles at 140 miles an hour. They crash. They each run in a different direction. They're followed by the police at this particular point from the start of the chase, and the police got there almost immediately. Each man is tracked down in a different way, and by each person they collect Mr. Felder, and he's wearing a jacket that you can see in the videotape, and the gun that that person wearing that jacket is carrying is next to him or near him where he's captured. And the same thing with Mr. Ryans and the same thing with Mr. Kelly. He's chased from the car. He's tracked with dogs and by the police. He's found under a deck with a mask and the gun that's seen in the videotape near him. You could stop right there. There's a crime. There's a crime. And each one of the defendants with the clothing in that videotape and the weapon that is recovered near them, and they are followed from the scene of the crime to their point of capture. So yes, I mean, the confession is grand evidence, but it's not the but-for cause of this person's conviction. We know there's a crime committed, so they're not confessing to something that's a secret. We know a person is killed. That's not part of the confession, and it's my contention we know who did it because they were trailed from the scene of the crime to their ultimate capture, and the indicia of things seen in that videotape are captured near them. So it's not even a whodunit at this particular point. And I think these are important factors when you're assessing the effectiveness of counsel. The idea isn't that you create mythical defenses in particular cases. The idea is that if you're a competent attorney, you take what's given to you, and you exploit it to the best of your ability in constant with rules of law and procedure and things of that sort. And I think what's particularly lacking in this analysis by this is all based upon supposition. There's no indication here that counsel didn't know that his client was at the hospital or what the effect of the Percocet, and I believe it was Motrin were the two things that we can pin down, he was actually given at the hospital. There's no indication that the... If the suppression hearing had succeeded because counsel had done all the things which it said that he didn't do, and the confession had been suppressed, then counsel at trial could have focused his whole attention on all the very strong evidence that was there. Instead, counsel focused a good deal of attention at trial to some of these things that came out later. So, I don't quite understand why it would have been... You're sort of suggesting that counsel didn't bother with the other because it didn't matter. It seems to me that whether it mattered or not is a different thing, but in terms of counsel, a sensible counsel trying to get the confession out early and being done with it so that he could then focus everything on the admittedly strong evidence of another sort. It seems to me it's hard to make that argument. That's not precisely the argument I'm making. What I'm making is the argument that the facts and circumstances of this case were known to defense counsel. There's no indication here that it wasn't. The failings in this analysis is we don't know what discussions counsel had with his client. We suppose that he could have presented this argument on suppression, and I want to get back to the 440 motion and the argument on appeal in a moment, but we don't know that he didn't sit down with his client and his client said, well, this is what happened, and I got to the police station. We did this. We did this. They took me to the hospital. I took some Percocet. I went back. We went through this, this, and this. We don't know what that conversation was. Isn't, aren't you, however, when you're saying that making an argument that there should have been a hearing? No, I am not making that argument. No, obviously you don't, but what you're saying is we don't know certain things which had there been a hearing might well have come out. It's one of the things one would have asked counsel. The problem with the 440 motion, pro se or otherwise, there's a couple of factors that go into this, and in order to get the hearing, there has to be a sufficient factual showing. The error that was made in this particular case by the defendant acting pro se is he just cited completely to the trial record in his argument, making this a record-based claim. The purpose of a motion to vacate is to bring facts before a court that are not part of the record, that are towards the record. That is the whole basis for that motion. That is why it was a technical failure to present that, and I will note in New York State, there is no limit on the number of 440s a person can make over the years, and if he wanted, he could have made a subsequent one. The real failure in that is that there wasn't a statement that my attorney wouldn't give me an affidavit or there was no affidavit from the attorney. Either one of those would have got him closer to a hearing. The other part of that 440 motion is, and also in his pro se supplemental brief, which is another New York add-on saying you don't have a right to hybrid representation on an appeal, but we let prisoners do that in a lot of cases, where their attorney presents a brief and they get to write something additional. In both of those instances, he never claimed he was, for lack of a better word, intoxicated by the use of narcotics. He did say his attorney should have presented this evidence, which gets back to my point, we don't know what the conversation he had with his attorney is. Now, you can parse apart a trial, and I believe they actually said this in Strickland, where they said, look, you can look at any trial and you can look down a case. But they're not required to make a record about everything they do or not do in this particular case. It would grind the system to a halt. So what you really have is a retrospective here, sort of a changing of horses in the middle of the stream, where you're coming to the point where you're saying, well, we tried this and it didn't work. What about this? And we can retry this case again, and if there's a conviction, we can raise new issues on appeal, and then we can this over and over until we think we've exhausted every possible issue. And that is particularly what they warned against in Strickland. And in Strickland, which was a death penalty case, the issue there was whether or not counsel was ineffective for failing to, there were two issues, but I think the main one in that particular case was that he didn't contact or use relatives of mitigation character witnesses. And the Court said, you know, there are many things that he could or could not have done, but they did not in Strickland establish ineffective assistance of counsel in a death penalty case. Similarly, in Harrington v. Richter, which sets this incredibly high standard for ineffective assistance, it's not just that it has to be unreasonable, but it that counsel's was effective. In Harrington, there was, as in this case, a summary denial of the claim of ineffective assistance. I believe it was in California, and it was a California State Habeas Corpus proceeding. And after the application was made, the Court essentially said the application is denied. Well, the appellate division in this case said that Kelly's claim that trial counsel was ineffective is without merit. We've gone a long, long way since Strickland. You know, if you look at it, it is kind of odd, the cases coming down now that say that a person was constitutionally deprived of counsel. And yet, this has been the area where, after all, the Supreme Court has sent back, has reversed more cases than almost anything else, so that the initial statements of we'll never do this and so on in Strickland and in other cases, we've gone a very long way from. And, gee, there are any number of cases where we've reversed and the Supreme Court has reversed on grounds that, if you go back to the language of Strickland itself, would seem very dubious. The language that you're citing to us now. Yes, but certainly on the Habeas Corpus front, Harrington v. Ritter. Yeah, the Habeas Corpus is more difficult for the reasons I was drawing up. Is a higher or a different standard, at least. But the other part I wanted to make about Harrington is in Harrington, a homicide case, the allegation at post-trial was that the defense attorney failed to ask that a certain parts of blood spatter be tested to prove whether or not where certain bodies were and which story concerning this double shooting, one homicide and multiple people whose story was correct. And there was a summary denial on this day of court and Harrington went on to say that for essentially the same reasons that we had in Strickland, that there's innumerable tax that the defense counsel could have taken and there's no way to tell based on this or there's no way to say that this counsel was ineffective. So I think the standard here is very clear. The state courts passed on this. Counsel presented his defense. I do want to mention one other thing. The doctor was called by the people as a rebuttal witness after defense counsel put the medical records into evidence at trial. Medical records from the hospital in New York and I think it's called the Massachusetts plan originally when they were talking about hearings on voluntariness and Miranda, is that you can both contest classic voluntariness in a pretrial hearing and raise classic voluntariness at trial. Miranda, you have to do at a pretrial hearing, that's not an issue for a jury to consider. So the net effect of this is he did in fact raise the voluntariness issue as a matter for the jury to consider and the people called the doctor rebuttal. Thank you all very much. Thank you very much. Mr. Culp, you have three minutes. Just on the drugs one last time. He's right. Motrin too. So we're actually up to four now. But I just want to be clear. I submitted a supplemental appendix that had some references that I neglected to put in my original appendix. I just want to be clear that the 800 milligrams of codeine is on SA-17 in my supplemental appendix. Mr. Kelly, question, Mr. Kelly was also prescribed 800 milligrams of codeine. Answer, correct. That's the doctor he was just talking about. The Vicodin is on SA-13 of my supplemental appendix. Now that I caution you, that's coming from the detective, not the doctor. But we have three from the doctor, Motrin, Percocet, and 800 milligrams of codeine. This suggestion of Vicodin from the detective. I just I'm content to rest on my papers, including that point three that I find very interesting, but I don't think it's worth bringing up in a rebuttal summation. But on his point about the 440, I don't think it's fair to say that everything my client, pro se or otherwise, said in his 440 was related to things that happened at trial. He was very critical of his discovery obligations to find out what the medical situation was before the hearing. He was critical of him for not seeking to reopen the hearing after this information came out at trial. And when opposing counsel says, well, we don't know what conversations that petitioner and his lawyer had, to me, that is the point. That if there were conversations between petitioner and his lawyer, then that's the kind of thing that a court properly searching for the truth in this area would want to know about. I, for the life of me, can't think of a strategic reason to ignore this kind of drug use shortly before a confession. I can't think of why let's save that for trial. As you pointed out, Judge Calabresi, if you can get that out, um, then you've got a much better chance going against the circumstantial case that he laid out. So to me, that is, that is, that is the point actually. And I'll rest on that. I'm not hearing. What is the likelihood that bringing out the drugs would have resulted in the suppression of the, of the, um, of the confession? I mean, there, there's, there's, there's two issues. One is what is the likelihood that, um, suppression of the confession would have changed the result of the trial. But in addition, what is the likelihood that, that bringing out the drugs would have resulted in the suppression of the confession? I'm going to say, honestly, I don't know, but that, that is part of my point, because I think that a proper, um, investigation of what it means to take these drugs or to find out, first of all, what drugs did he take when and what quantities, what are the interactive capabilities and so forth? You could, you could come up with a very persuasive case that this, this man might have been diluted or whatever the medical term is. That's part of my point that we don't know. I mean, I can, I can cite to you. Is there any particular failure in the remaining, in the proof? If you and circumstantial evidence, um, can you really say that there's a likelihood that he would not have been convicted? Well, it's a, it's a, it's an, um, it's a circumstantial case. He laid it out. Um, I, I, I'm not going to try to rebut it piece by piece, but, uh, is there any particular weakness in it that you could identify as being potentially affected by the admission of the confession? They, I guess the weaknesses that they, they didn't have, despite all these conclusions with this, that guy has, he's using his left hand and Mr. Kelly's left-handed. Um, and, uh, there's a black hat, there was a black hat found at the arrest scene, things like that. Um, they followed him from the scene of the crime to the place where they found them. I mean, I, I would agree that if it was just the left hand and the, and the dark, the dark sweater or whatever, that would be a different matter, but it was those things coupled with that they followed him from the scene of the crime, right to the place and found the gun close by and the identifying clothing close by. This doesn't answer your question. There's also issues as to, as to even if those three people who were found in that neighborhood were the same three people, um, in the, um, the, at the radio shack, um, do we know what role each of them played? For example, do they say that my client was the guy with the gun who did not, uh, shoot that poor fellow who got murdered? Um, but the defense attorney without the confession could say, no, he was in the car was first, would the confession have been excluded? And that question is, was it, would it be unreasonable for a state to say that it would not have been excluded even under these terms? And then the next question is, uh, even assuming that it was, would have been excluded, would it have been unreasonable to say for a state to say that the conviction stands anyway? But remember again, that's because it is a habeas. There is that double thing on which we're asking you not just to argue that it would have happened, but you have to convince us that, uh, that under court rulings that it would have been unreasonable to decide otherwise. And that, I mean, it's not your fault. The only answer I can give you is yes. It would have been unreasonable. I don't have a magic, um, item to refute him other than to say it was, it was the confession. That's, that's my point. Thank you, Mr. Culp. Thank you very much. Thank you both for your the final.